UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
DAWN MARIE HUNT-COLEMAN,                                                :
:
                        Plaintiff,                                      :
:                          23-cv-5049 (LJL)
            -v-                                                         :
:                          OPINION AND ORDER
COMMISSIONER OF SOCIAL SECURITY,                                        :
:
                        Defendant.                                      :
:
-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___7/8/2024___

LEWIS J. LIMAN, United States District Judge:

Dawn Marie Hunt-Coleman ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "SSA," or "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under the Act for lack of disability. Dkt. No. 2 at 1–2. Plaintiff moves, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings. Dkt. No. 13. Plaintiff submits that the determination by Administrative Law Judge Raymond Prybylski (the "ALJ") of Plaintiff's Residual Functional Capacity ("RFC") suffers from legal errors and is, at least in part, not supported by substantial evidence. Dkt. No. 14 at 5. Plaintiff seeks an order reversing that decision and/or remanding the matter to the ALJ. *Id.* at 5, 16.

Defendant opposes Plaintiff's motion for judgment on the pleadings. Dkt. No. 15. Defendant argues that the ALJ's decision was based on substantial evidence and was free of legal error. *Id.* at 19. Accordingly, Defendant asks that the Court affirm the Commissioner's decision. *Id.*

For the following reasons, Plaintiff's motion for judgment on the pleadings is denied and the final decision of the Commissioner is affirmed.

## BACKGROUND

The following facts are taken from the administrative record (the "Record") filed in connection with this action.  Dkt. Nos. 9–9-3; *see Sawicki v. Comm'r of Soc. Sec.*, 2023 WL 5164212, at *1 (S.D.N.Y. Aug. 11, 2023).  The Record contains detailed information related to Plaintiff's medical history; her responses to social security disability insurance forms; opinion evidence from state medical examiners; as well as the transcript of the hearing before the ALJ and his decision.

Plaintiff was born in 1963 and was fifty-six years old at the alleged onset date ("AOD") of her disability on September 4, 2019.  Dkt. No. 9 at 67.  She is a resident of the Bronx, New York, and has completed a high school education and three years of college.  *Id.* at 257.  From 1987 to 2017—prior to Plaintiff's AOD—she worked as a "compliance analyst," "employment vendor analyst," "housing specialist," "case reviewer," and "unit supervisor" in different departments of New York City's Human Resources Administration.  *Id.* at 41–43, 79–80, 269–73, 277–78.  In February 2017, she underwent a two-day lumbar fusion surgery which, she alleges, worsened the pain she was already experiencing in her lower back, making her unable to return to work.  *Id.* at 42–48.  In her initial application for DIB, dated August 24, 2020, Plaintiff asserted that she has numerous conditions, including: diabetes, high blood pressure, high cholesterol, kidney disease, and impairments affecting her back and knees.  *Id.* at 68.  She last met the insured status requirement of the Act on December 31, 2022, such that September 4, 2019 through December 31, 2022 is the relevant time period for her disability claim.  *Id.* at 15, 67.

I.       **Medical History**

The earliest medical report in the Record, dated October 3, 2018, is a post-surgery MRI

documenting symptoms that "could be consistent with mild sacroiliitis . . . [and] osteoarthritic

change," which were treated with sacroiliac injections.  *Id*. at 82, 85.  In a report dated November

3, 2019, the treating physician diagnosed "[r]ight L5 radiculopathy with mild distal denervation

and a left lumbosacral radiculopathy without distal denervation."  *Id*. at 94.

Plaintiff regularly saw an endocrinologist, rheumatologist, and internist and received pain

management treatment at the White Plains Hospital, before she transferred to Montefiore

Medical Center in May 2022.  *See generally* Dkt. Nos. 9-1–9-3.  On February 26, 2019, Dr. Kay

Lovig described Plaintiff as a "55 [year-old female] with a history of type 2 [diabetes mellitus]

since approximately 2014 [and] morbid obesity . . . [who] reports to feel well."  Dkt. No. 9-1 at

1.  Her medical history included: allergic rhinitis, anemia, asthma, back pain, constipation,

depression, diabetes mellitus, headache, hypertension, obesity, osteoarthritis, sleep apnea, and a

urinary tract infection.  *Id*. at 2.  Her surgical history included back surgery, breast reconstruction

in 2014, a hysterectomy in 2014, reduction mammaplasty, and a lumbar fusion of the L3-L5

spinal segments in March 2017.  *Id*.  Dr. Lovig also noted that Plaintiff's "current hgb alc is very

elevated at 12% thus indicating poorly controlled diabetes."  *Id.* at 5.  Subsequent reports

repeatedly described Plaintiff's condition as "uncontrolled type 2 [diabetes mellitus] and stage 3

[chronic kidney disease]" and recommended continuous glucose monitoring, which "[Plaintiff]

declined . . . risk[ing] uncontrolled [diabetes management]."  *Id.* at 26, 53, 76.  Plaintiff likewise

repeatedly "declined a dietitian."  *Id*.

Plaintiff initially saw Dr. Pavan Dalal for pain management on May 5, 2020, who found

that she "[h]as had several epidurals in the past, neuropathy in her feet [feeling] constant pain

[and c]onstant numbness."  Dkt. No. 9-2 at 16.  A right knee x-ray dated March 24, 2021 found

"[m]ild patellofemoral and mild lateral tibiofemoral joint space compartment degenerative change" and an x-ray of Plaintiff's lumbosacral spine found "[n]o acute fracture or subluxation." Dkt. No. 9-1 at 107–109.  Reports from the same time by Dr. Dalal found "[m]oderate to severe osteoarthritis of both knees." Dkt. No. 9-2 at 123.  He prescribed Neurontin and Cymbalta which led to Plaintiff reporting at her next appointment on June 4, 2020, that the treatment had "significantly improved pain in feet, now down to 3/10 mild in severity." *Id*. at 26, 48.  After imaging the sacroiliac joints in January 2021 and findings signs that "could be consistent with mild sacroiliitis . . . [and] osteoarthritic change," Dr. Dalal prescribed Zanaflex and Gabapentin, noting at a later visit that "[b]ack pain [had] also improved." *Id*. at 153.

Plaintiff transferred to Montefiore Medical Center around May 2022 where she saw pain and orthopedic specialists.  Dkt. No. 9-3 at 62–67.  At her first recorded visit on May 17, 2022, Dr. Mitchell Weiser documented that Plaintiff had "been treated conservatively . . . [as] patient does not have rest/night time pain . . . [and] pain does not interfere with their ability to work." *Id*. at 68.  He also noted the use of a "support cane" and that Plaintiff "walks with antalgic gait." *Id*. at 69.  He further noted "full strength and intact sensation throughout both lower extremities," administered lidocaine injections in both knees, and recommended "conservative management consisting of: rest, activity modification, physical therapy, weight loss, [a] home exercise program, intra-articular corticosteroid injection and Tylenol, [and a] cane." *Id*. at 72.

## II.     Disability Claim

Plaintiff first applied for DIB on August 24, 2020, asserting that she suffered from pain in the back, both knees, diabetes, high blood pressure, and kidney disease.  Dkt. No. 9 at 66–67, 256.  In questionnaires filed with her claim, she alleged that her pain began "around 1998" when she "stopped walking . . . more than 2 blocks without taking the bus" and started to experience pain in her lower back as a "stabbing ache." *Id*. at 284.  In her work history report, Plaintiff

4

explained that she "was unable to return to work" because she "seldom [has] a day when [she does not] experience pain to [her] back or knees or both." *Id*. at 276.  Plaintiff alleged that she has "also developed stage 3 kidney disease due to diabetes and [that] incontinence has become an issue." *Id*.  She "use[s] a cane daily, even in the house." *Id*.  In her daily activities report, Plaintiff explained that she completes her chores, but "that it's very difficult to vacuum because of the push and pull of the machine" and that she uses a "reacher tool" to put away groceries, which she receives by delivery. *Id*. at 288.  In her function report, Plaintiff stated that she "cannot stand for more than five minutes due to the back and knee pain" and her pain medication causes sleepiness which "doesn't allow [her] to use the phone or computer for more than 15 minutes . . . without having to stop." *Id*. at 299.  She has become slower in completing her daily activities, she uses a stool to cook, "cleaning has become a serious issue" as "it's hard to bend," and "since COVID-19, [she] seldom go[es] out [as] [d]epression has become worse." *Id*. at 292–95.  Plaintiff further reported: "I can only lift 5 lbs. or less.  Do not squat ever.  Difficult to bend . . . .  Cannot stand for more than ten minutes w/o sitting down . . . [and] can't walk a 1/4 block w/o stopping.  Difficult to sit for more than 1/2 hour.  Do not kneel." *Id*. at 296.

As part of Plaintiff's DIB claim, the Division of Disability Determination referred Plaintiff to state medical examiner Dr. Laiping Xie who examined her on March 24, 2021.  Dkt. No. 9-1 at 102.  Dr. Xie reported: "[Plaintiff] appeared to be in no acute distress.  Gait is slow. Unable to walk on heels and toes.  Squat 1/3 of full.  Stance normal.  Used no assistive devices. Needed no help changing for exam or getting on and off exam table.  Able to rise from chair without difficulty." *Id*. at 104.  Dr. Xie diagnosed Plaintiff with a COVID-19 infection, asthma, shortness of breath, low back pain, pain in the knees, obstructive sleep apnea, hypertension, diabetes, and chronic renal disease at stage 3. *Id*. at 105.  He found no unusual abnormalities and

concluded that "the claimant has moderate limitation in prolonged standing, walking, climbing stairs, squatting, and bending.  She should also avoid greater or heavy exertion." *Id*.

Based on her medical record, consultative medical examiner Dr. I. Seok determined that Plaintiff had several severe medical impairments, "however, the claimant's statements concerning the intensity, persistence and limiting effects . . . are generally not consistent with the evidence of record." Dkt. No. 9 at 76.  Dr. Seok made the following observations about Plaintiff: "[g]ait is slow, [she is] unable to walk on heels and toes . . . .  Claimant has [diabetes mellitus], asthma, diabetic neuropathy . . . is on a lot of meds, has a nebulizer . . . has pain from her diabetic neuropathy . . . is stage 3 on her chronic renal disease but not on dialysis . . . has asthma and has rescue inhalers to help her with dealing with triggers of cold air, dust, pollen . . . .  She is able to do basic [activities of daily living], cook, [and] shop." *Id*. at 78–79.

Dr. Seok also determined that Plaintiff would have the following exertional limitations: she could only lift or carry up to ten pounds, stand or walk for a maximum of two hours, and sit for "[a]bout 6 hours in an 8-hour workday." *Id*. at 77–78.  Additionally, Dr. Seok recommended that Plaintiff should "[a]void even moderate exposure" to fumes, odors, dusts, or poor ventilation. *Id.*  On that basis, disability examiner D. Chowdhury concluded that Plaintiff was not disabled because her RFC allowed her to perform her previous work as actually performed, but that she would be restricted to mainly sedentary work with some exertional limitations. *Id*. at 81.

Plaintiff requested reconsideration of Chowdhury's conclusion, but she did not present any new evidence or claims. *Id*. at 83–91.  Accordingly, medical examiner Dr. S. Naroditsky and disability adjudicator J. Bond left the prior determination unchanged, and concluded that

Plaintiff was not disabled and retained the RFC to perform her prior work subject to the specified exertional limitations.  *Id.* at 99–100.

### III.     Administrative Hearing

After her claim for DIB was denied initially and upon reconsideration in July and August 2021, a hearing was held before the ALJ on May 17, 2022.  Dkt. No. 9 at 14.

#### A.     Plaintiff's Testimony

At the hearing, Plaintiff testified that she stopped working as an analyst in New York City's Human Resources Administration in January 2017 immediately before her back-fusion surgery.  *Id*. at 41, 47.  She explained that after the two-day surgery there was still pressure on her lower back and she "feel[s] like [she is] in worse pain since the surgery."  *Id*. at 58.  Although the treating physician recommended further surgery, he also indicated that Plaintiff would "have to do a little more therapy and . . . lose more weight."  *Id*.  Plaintiff did not undergo further back surgery during the relevant time period.

Plaintiff further testified that she was receiving different treatments for her back injury, diabetic neuropathy in her feet, and knee pain at Montefiore Pain Management since transferring from her previous medical provider, White Plains Hospital.  *Id*. at 48.  She was undergoing the diagnostic "facet procedure" and taking Tizanidine and Tylenol for her back pain supervised by Dr. Fadi Farah.  *Id*. at 51.  She further testified that, at the time, she had suffered from diabetes for fourteen to fifteen years, developed diabetic neuropathy in both her feet, and experienced sleep apnea.  *Id*.  She also explained that her blood sugar is "controlled pretty much" as she is taking Glimepiride daily and Trulicity weekly.  *Id*. at 52.  Plaintiff further testified that her creatine level remains high, she is severely anemic, and has developed chronic kidney disease.  *Id*. at 53.

When she was asked whether she would be able to resume her previous job as an analyst, she answered in the negative and explained that because of her back pain it would be "very difficult for [her] to sit that long." *Id*. at 54.  She elaborated that, after a COVID infection, she had developed asthma, that she "had to take [her] pump every day," and that "it's very difficult for [her] to even walk down the block." *Id*. at 55.  Plaintiff further testified that she does not leave the house for weeks at a time unless she has a doctor's appointment. *Id.*  When completing her housework, she faces great difficulty in lifting and bending. *Id*. at 56.  Under examination by her attorney, Plaintiff elaborated that she has "no ligaments on the outside of [her] knee" and she uses a cane to "stand up from a chair . . . in the house sometimes [and] outside for balance." *Id.* at 57.

### B.      Vocational Expert's Testimony

At the same hearing, a vocational expert ("VE"), Victor Alberigi, testified that Plaintiff's past relevant work experience can be classified as an administrative analyst and as akin to a housing construction inspector, "although it's not a complete match." *Id*. at 59–60.  The ALJ asked the VE about a "hypothetical person of the claimant's age, education, and work experience . . . limited [to] the full range of sedentary work" with the additional limitations that they "could never climb ladders, ropes, or scaffolds . . . could never kneel or crawl and could only occasionally crouch [and] need to avoid even moderate exposure to respiratory irritants, like fumes, odors, dusts, and gasses." *Id*.  The VE testified in response that such a hypothetical person could perform Plaintiff's prior work as an administrative analyst—both generally and as she actually performed it—but not her work classified as a housing construction inspector. *Id*. In response to a second hypothetical, the VE testified that a person who required a "sit/stand option"—that is, a person who could "[s]it 30 minutes at a time, but then they would need 5 minutes at that point where they'd be standing"—could still perform Plaintiff's previous job. *Id*.

However, in response to a third hypothetical person who would "need to lay down for one hour of every eight-hour day," the VE explained that such a person could not perform Plaintiff's prior position as an analyst. *Id*. at 61. The VE also clarified that the first and second hypothetical persons could perform Plaintiff's previous job as an analyst even if that person had to use "a cane to ambulate and balance." *Id*.

## IV.    The ALJ's Decision

On August 12, 2022, the ALJ issued a decision finding that Plaintiff was not under a disability within the meaning of the SSA. *Id*. at 15.

In rendering his decision, the ALJ followed the well-established framework governing disability claims. The ALJ employed the five-step analysis set forth in 20 C.F.R. § 404.1520(a) that ALJs must follow in evaluating disability claims.[1] *See Cichocki v. Astrue*, 729 F.3d 172, 173 n.1 (2d Cir. 2013) (per curiam). He considered: (1) whether Plaintiff engaged in substantial gainful activity; (2) whether she had a medically determinable impairment that was "severe" or a combination of impairments that was "severe"; (3) whether her impairment or combination of impairments was of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; and (4) whether she had the RFC to perform the requirements of her past relevant work. Because the ALJ concluded that Plaintiff was able to perform her past relevant work, his analysis ended at the fourth step. *See* Dkt. No. 9 at 17–23.

---

[1] SSA regulations establish "a five-step process to aid the Commissioner in determining whether a particular claimant is disabled." *Robles v. Colvin*, 2019 WL 7790854, at *11 (S.D.N.Y. Apr. 9, 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Prior to step five, if a claimant's impairment "does not meet or equal a listed impairment, [the Commissioner] will assess and make a finding about [a claimant's] residual function capacity." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden of proof on the first four steps of the analysis. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998). The burden shifts to the Commissioner to show that the claimant is capable of other work on the fifth step. *Id*.

At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity from her AOD of September 4, 2019.  *Id*. at 17.  At step two, the ALJ determined that Plaintiff had severe impairments, including "obesity, lumbar radiculopathy, degenerative joint disease of the bilateral knees, sleep apnea, hypertension, diabetes, asthma, [and] chronic kidney disease." *Id*.  The ALJ also determined that "[i]nasmuch as obesity is a medically determinable impairment . . . the claimant's obesity would exacerbate [her] musculoskeletal and diabetic conditions." *Id*.  The ALJ concluded that Plaintiff's "medically determinable impairments significantly limit the ability to perform basic work activities." *Id*.  At the third step of the inquiry, the ALJ determined that Plaintiff's impairments did not, individually or in combination, meet or equal the criteria of an impairment identified in the Commissioner's "Listings of Impairments" in 20 C.F.R. 404, Subpart P, Appendix 1—particularly Listings 1.15 (disorders of the skeletal spine), 1.16 (lumbar spinal stenosis), 1.18 (abnormality of major joint(s) in any extremity), 3.03 (asthma), and 6.05 (chronic kidney disease). *Id*. 17–18.

The ALJ then calculated Plaintiff's RFC and concluded that she had the RFC to perform less than a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) with the additional limitations that "[a]fter every 30 minutes of sitting, [she] would need to stand for five minutes before resuming sitting, [she] cannot operate foot controls, climb ladders, ropes, scaffolds, kneel, or crawl, and must avoid even moderate exposure to respiratory irritants like fumes, odors, dust, or gases." *Id.* at 18.

In making this determination, the ALJ first noted that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 19.  But he also noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the

record." *Id.* Relying on Plaintiff's medical record, her activities report, reports by state agency

consultants, and the opinion of state agency consultative examiner Dr. Xie, the ALJ concluded

that the Plaintiff "has some exertional limitations but that she retains the ability to stand and/or

walk for at least two hours and lift and carry at least ten pounds occasionally." *Id.* at 21. In

particular, the ALJ noted that Plaintiff's medical records and diagnostic studies, her

noncompliance with recommended diabetes and weight loss treatments, and her conservative

treatment history supported his findings regarding Plaintiff's exertional limitations. *Id*. at 19–21.

With this determination of Plaintiff's RFC, the ALJ found at step four that she was

capable of performing her past relevant work as an administrative analyst. *Id*. at 22–23. The

ALJ therefore concluded that Plaintiff is not disabled under Sections 216(i) and 223(d) of the

Act. *Id.* at 23.

## PROCEDURAL HISTORY

After the ALJ issued his decision on August 12, 2022, Dkt. No. 9 at 23, Plaintiff sought

review of the decision by the Appeals Council, *see id.* at 29. The Council denied Plaintiff's

request on April 14, 2023, making the ALJ's decision the final decision of the Commissioner.

*Id*. at 9.

Plaintiff filed suit in this Court to challenge the Commissioner's final decision on June

15, 2023. Dkt. No. 2. On January 24, 2024, Plaintiff filed a motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c) and an accompanying memorandum

of law. Dkt. Nos. 13–14. Defendant filed a brief in opposition on March 1, 2024, in accordance

with Supplemental Rules for Social Security Actions 5, 6, and 7, 42 U.S.C. § 405(g), and

Standing Order M 10-468. Dkt. No. 15. Plaintiff filed a reply on March 25, 2024. Dkt. No. 16.

**LEGAL STANDARD**

A district court may affirm, modify, or reverse a final decision of the Commissioner of

Social Security pursuant to 42 U.S.C. § 405(g).  The reviewing court may set aside the agency's

disability determination "only where it is based upon legal error or where its factual findings are

not supported by substantial evidence."  *Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL

8167136, at \*12 (S.D.N.Y. Dec. 30, 2020) (internal quotation marks and citation omitted), *report

and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

The Court reviews the ALJ's decision in two stages.  First, the Court must decide

whether the Commissioner failed to apply the correct legal standards.  "Failure to apply the

correct legal standard constitutes reversible error, including, in certain circumstances, failure to

adhere to the applicable regulations."  *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012)

(summary order) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)) (remanding for

noncompliance with regulations).  A court reviews the ALJ's application of legal standards de

novo.  *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *Thomas v. Astrue*, 674 F. Supp.

2d 507, 530 (S.D.N.Y. 2009).

Absent a finding of legal error, a reviewing court moves to the second stage of its review

and considers whether the ALJ's decision was supported by substantial evidence.  *See Tejada v.

Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) ("First, the Court reviews the Commissioner's decision

to determine whether the Commissioner applied the correct legal standard . . . .  Next, the Court

examines the record to determine if the Commissioner's conclusions are supported by substantial

evidence"); *Calvello v. Barnhart*, 2008 WL 4452359, at \*8 (S.D.N.Y. Apr. 29, 2008) (same),

*report and recommendation adopted*, 2008 WL 449357 (S.D.N.Y. Oct. 01, 2008).  "Substantial

evidence . . . 'means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In applying the substantial evidence standard, the Court "does not determine de novo

whether [the Plaintiff] is disabled." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per

curiam) (internal quotation marks and citation omitted).  Rather, "once an ALJ finds facts, [the

Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."

*Brault v. Comm'r of the Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)

(emphasis in original) (internal quotation marks and citation omitted).  The Court must "conduct

a plenary review of the administrative record to determine if there is substantial evidence,

considering the record as a whole, to support the Commissioner's decision." *Id.* at 447; *see also*

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("In determining whether the agency's

findings are supported by substantial evidence, the reviewing court is required to examine the

entire record, including contradictory evidence and evidence from which conflicting inferences

can be drawn.").  Where evidence is deemed susceptible to more than one rational interpretation,

the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62

(2d Cir. 1982) ("Congress has instructed us that the factual findings of the [Commissioner], if

supported by substantial evidence, shall be conclusive.  We would be derelict in our duties if we

simply paid lip service to this rule, while shaping our holding to conform to our own

interpretation of the evidence." (internal citations omitted)).  In other words, deference must be

given to the Commissioner even if there is also evidence to support a contrary finding.  *See*

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may

also adequately support contrary findings on particular issues, the ALJ's factual findings must be

13

given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks and citation omitted)).

As the fact-finder, the ALJ need not "mention[] every item of testimony presented," *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983), nor "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). But the ALJ must not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r of the Soc. Sec. Admin.*, 557 F.3d 79, 82–84 (2d Cir. 2009). And the ALJ must discuss "crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

## DISCUSSION

Plaintiff argues that the ALJ's determination of her RFC was not supported by substantial evidence on three grounds. First, Plaintiff asserts that the ALJ failed to assess her work abilities on a function-by-function basis. Dkt. No. 14 at 14. Second, she argues that the RFC determination is inconsistent with Dr. Xie's medical opinion. *Id.* Third, she contends that the RFC determination is incorrect because it does not acknowledge her use of a support cane. *Id.* at 16. Defendant counters that the ALJ's decision amply satisfied the requirements of binding precedent and therefore should be affirmed. Dkt. No. 15 at 11. The Court addresses each of Plaintiff's arguments in turn.

## I.    Function-by-Function Analysis

Plaintiff contends that "the ALJ determined that [her] impairments limited her to sedentary work with limitations [but] failed to assess [her] ability to perform work activities on a function-by-function basis." Dkt. No. 14 at 14. According to Plaintiff, that omission was

14

erroneous because "[t]he ALJ must discuss the claimant's ability to perform these functions [i.e.,

sitting, standing, walking, lifting, carrying, pushing, and pulling] in an ordinary work setting on a

regular and continuing basis . . . and describe the maximum amount of each work-related activity

the individual can perform." *Id*. at 13.  As "the ALJ's decision does not include any meaningful

discussion regarding her ability to stand, walk, or sit," Plaintiff urges the Court to remand the

RFC determination.  *Id*. at 14.

       The ALJ did not commit legal error.  Generally, when determining a claimant's RFC

based on her exertional limitations, the ALJ "must first identify the individual's functional

limitations or restrictions and assess his or her work-related abilities on a function-by-function

basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945."

SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).  However, the Second Circuit has

clarified that "the failure to engage in such a function-by-function analysis does not constitute a

*per se* error requiring remand." *Cichocki*, 729 F.3d at 173–74.  Rather, "[w]here an ALJ's

analysis at Step Four regarding a claimant's functional limitations and restrictions affords an

adequate basis for meaningful judicial review, applies the proper legal standards, and is

supported by substantial evidence such that additional analysis would be unnecessary or

superfluous . . . remand is not necessary merely because an explicit function-by-function analysis

was not performed." *Id.* at 177; *see also Brown v. Colvin*, 73 F. Supp. 3d 193, 200 (S.D.N.Y.

2014) (applying *Cichocki* and finding that a function-by-function analysis was not required

where the ALJ's "decision included a thorough analysis of the evidence of [Plaintiff's] physical

and mental limitations"); *Hardy v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d 607, 616 (S.D.N.Y.

2020) ("[A]n express function-by-function assessment of a claimant's RFC is not required, so

long as the ALJ explain[s] how the evidence supports his or her conclusions about the claimant's

limitations and . . . discuss[es] the claimant's ability to perform sustained work activities." (internal citations and quotations omitted)).  "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Cichocki*, 729 F.3d at 177.

Although the ALJ did not conduct an explicit function-by-function analysis as part of Plaintiff's RFC determination, the ALJ's "decision included a thorough analysis of the evidence of [Plaintiff's] physical . . . limitations," *Brown*, 73 F. Supp. 3d at 200, and he explained how the medical evidence on the Record "support[ed] his . . . conclusions about the claimant's limitations," *Hardy*, 435 F. Supp. 3d at 616.  The ALJ determined that Plaintiff retained "the residual functional capacity to perform less than a full range of sedentary work," Dkt. No. 9 at 18, by carefully analyzing Plaintiff's exertional "limitations . . . and ability to perform sustained work activities," *Hardy*, 435 F. Supp. 3d at 616.  Specifically, the ALJ conducted a careful review of Plaintiff's medical records, Dkt. No. 9 at 19–21, before concluding that the "claimant has some exertional limitations, but retains the ability to stand and/or walk for at least two hours and lift and carry at least ten pounds occasionally," *id*. at 20.  The ALJ further recounted the results of Dr. Xie's medical examination, noting:

> [Plaintiff's] gait was slow . . . she was unable to walk on her heels and toes . . . was able to squat to one-third of normal range but was observed to rise from a chair without any difficulty . . . needed no help changing . . . getting on and off the exam table . . . had full range of motion in the cervical spine but in the lumbar spine was limited . . . retained full ranges of motion in her shoulders, elbows, forearms, and wrists . . . hip rotation was restricted . . . while knee flexion and extension were limited . . . [and] [n]o muscle atrophy or joint abnormalities were observed.

*Id*. at 21.  Additionally, the ALJ cited Dr. Xie's conclusion that Plaintiff "exhibited moderate limitations regarding prolonged standing, walking, climbing stairs, and bending."  *Id.* at 22.  The ALJ further "discuss[d] the claimant's ability to perform sustained work activities," *id.*, when

16

deferring to Dr. Xie's analysis of Plaintiff's exertional limitations. The ALJ's functional finding, based on Plaintiff's medical records and Dr. Xie's examination, was supported by substantial evidence. *See Bahaga v. Comm'r of Soc. Sec.*, 2020 WL 5755020, at \*6 (S.D.N.Y. July 2, 2020); *Padilla v. Colvin*, 2013 WL 4125039, at \*11 (S.D.N.Y. Aug. 15, 2013).

Because the "ALJ's analysis at Step Four regarding [Plaintiff's] functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," an additional function-by-function analysis would have been superfluous. *Cichocki*, 729 F.3d at 177. Thus, remand to perform a function-by-function analysis is unwarranted. *See Cain S. v. Comm'r of Soc. Sec.*, 2022 WL 17252414, at \*6 (W.D.N.Y. Nov. 28, 2022).

## II. Dr. Xie's Opinion

Next, Plaintiff argues that the ALJ "arbitrarily substitute[d] his own judgment for competent medical opinion . . . cherry-picked medical findings . . . [and] relied almost exclusively on the limitations assessed by the non-examining agency medical reviewers." Dkt. No. 14 at 15 (internal citations and quotations omitted). Plaintiff stresses that the "[a]gency examiner Dr. Xie opined that Ms. Hunt-Coleman is moderately limited in prolonged standing, walking, climbing stairs, squatting, and bending and she should avoid respiratory irritants and greater or heavy exertion." Dkt. No. 14 at 14. Plaintiff asserts that the ALJ's conclusion that Ms. Hunt-Coleman "can stand and/or walk for 2 hours in an 8-hour workday with unlimited stair climbing, bending, and squatting and she can tolerate up to moderate exposure to respiratory irritants" is inconsistent with the ALJ's finding that Dr. Xie's opinion was "persuasive." *Id*.

But there is no inconsistency. The ALJ did not determine that Plaintiff retained an RFC for "unlimited stair climbing, bending, and [that] she can tolerate up to moderate exposure to respiratory irritants." Dkt. No. 9 at 18. To the contrary, the ALJ's decision explicitly states that

17

Plaintiff "cannot operate foot controls, climb ladders, ropes, scaffolds, kneel, or crawl, and must

avoid even moderate exposure to respiratory irritants," *id.*, and that she "retains the ability to

stand and/or walk for at least two hours and lift and carry at least ten pounds occasionally," *id.* at

20.  The ALJ concluded that Plaintiff "has the residual functional capacity for less than a full

range of exertionally sedentary work," *id.* at 22, which "involves sitting, [and for which] a

certain amount of walking and standing . . . are required occasionally," 20 C.F.R. § 404.1567(a);

*see also Pirog v. Colvin*, 2016 WL 11484450, at *16 (S.D.N.Y. Mar. 7, 2016) ("'Occasionally'

means occurring from very little up to one-third of the time.  Since being on one's feet is

required 'occasionally' at the sedentary level of exertion, periods of standing or walking should

generally total no more than about 2 hours of an 8-hour workday, and sitting should generally

total approximately 6 hours of an 8-hour workday." (citation omitted)).  Likewise, sedentary

work usually does not entail "significant stooping" or crouching, SSR 83-10, 1983 WL 31251, at

*5 (S.S.A. Jan. 1, 1983), nor does it involve a significant amount of climbing or exposure to

environmental irritants, *see* SSR 85-15, 1985 WL 56857, at * (S.S.A. Jan. 1, 1985).  Dr. Xie's

finding that Plaintiff has a "moderate limitation in prolonged standing, walking, climbing stairs,

squatting, and bending" and that she should avoid moderate exposure to respiratory irritants or

heavy exertion is therefore entirely consistent with the ALJ's determination of an RFC of less

than a full range of sedentary work.  Dkt. No. 9-1 at 105.  As a result, Dr. Xie's conclusions do

not undermine the ALJ's determination or require remand.  *See Jimenez v. Astrue*, 2013 WL

4400533, at *12 (S.D.N.Y. Aug. 14, 2013) ("A finding as to RFC will be upheld on review when

there is substantial evidence in the record to support the requirements listed in the regulations."

(internal citations and quotations omitted)).

### III.   Plaintiff's Use of a Cane

Finally, Plaintiff argues that the ALJ erroneously overlooked Plaintiff's use of a cane in his RFC and hypothetical questions to the VE, notwithstanding Plaintiff's testimony "at the May 17, 2022, hearing that she requires a cane for balance," a "May 2022 treatment record from the Montefiore Center for Orthopedic Specialties not[ing] that the cane was prescribed," and the ALJ's acknowledgment that she used a cane.  Dkt. No. 14 at 16.

The ALJ referenced Plaintiff's use of a cane in his determination of her RFC.  Dkt. No. 9 at 21 ("It appears that, at least on occasion, [Plaintiff] uses a support cane and that, with it, she is able to walk at least up to a block in distance.").  Nevertheless, the ALJ reasonably decided not to include the use of a cane or another assistive device in Plaintiff's RFC limitations.  The Record includes conflicting evidence about Plaintiff's use of assistive devices—sometimes indicating that she "use[d] a cane daily, even in the house," *id*. at 276, and at other times noting that she "used no assistive devices," Dkt. No. 9-1 at 104.  While the Record perhaps permits the conclusion that Plaintiff's RFC requires the additional limitation of using a cane, the Record also provides substantial evidence that Plaintiff does not always require the use of an assistive device.  "The court must . . . 'defer to the Commissioner's resolution of conflicting evidence.'"  *Roxanne C. v. Kijakazi*, 628 F. Supp. 3d 405, 413 (D. Conn. 2022) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).  The ALJ recognized that Plaintiff uses a cane at times and mentioned it in his RFC determination, but decided not to add it as an additional limitation.  His decision in this regard was supported by substantial evidence.  *See Genier*, 606 F.3d at 49 ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks and citation omitted)).

19

Plaintiff's counsel asked the VE whether "the use of a cane to ambulate and balance[] would . . . affect [her] ability to do the . . . analyst job." Dkt. No. 9 at 61.  The VE responded:  "I don't believe so.  No."  *Id.*  "The Second Circuit has held that a vocational expert's testimony may constitute substantial evidence . . . and that an ALJ can reasonably rely on a vocational expert's testimony so long as it is not undermined by evidence in the record." *Hutchings v. Berryhill*, 2019 WL 5722478, at *16 (S.D.N.Y. June 28, 2019).  The VE's testimony serves as further substantial evidence in support of the ALJ's findings at Stage Four that a person similar to Plaintiff could resume her job as an administrative analyst.  Thus, the ALJ did not commit legal error or disregarded substantial evidence in finding Plaintiff not disabled under Sections 216(i) and 223(d) of the SSA.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the final decision of the Commissioner. Plaintiff's motion for judgment on the pleadings is DENIED.  The case is therefore DISMISSED.

The Clerk of Court is respectfully directed to close Dkt. No. 13 and close the case.


SO ORDERED.

Dated: July 8, 2024
      New York, New York                           LEWIS J. LIMAN
                                          United States District Judge